Filed 4/28/16; pub. order 5/17/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SUSAN HETZEL,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>HENNESSY INDUSTRIES, INC.,<br><br>        Defendant and Respondent. | A144218<br><br>(Alameda County<br>Super. Ct. No. RG13663277) |

Susan Hetzel, as successor in interest to James Hetzel,[1] appeals the trial court's award of summary judgment in favor of Hennessy Industries, Inc. (Hennessy). Plaintiff allegedly developed breathing difficulties and lung damage as a result of his exposure to asbestos while working as a mechanic. He brought claims for negligence and strict liability against several defendants, including Hennessy, alleging its brake shoe arcing machines released asbestos dust when he used them to grind brake linings. The trial court granted Hennessy's motion for summary judgment, finding Hennessy could not be held liable because its products did not contain asbestos, and there was no evidence Hennessy's products required asbestos-containing brake pads to function. The trial court's order is at odds with the Second Appellate District's recent opinion in *Sherman v. Hennessy Industries, Inc.* (2015) 237 Cal.App.4th 1133 (*Sherman*), which was issued after plaintiff filed his notice of appeal. We find *Sherman* is directly on point and persuasive, and we therefore reverse.

---

[1] Mr. Hetzel died in 2015, while the case was pending on appeal. For the sake of clarity we continue to use the term "plaintiff" here to refer to Mr. Hetzel.

# I. BACKGROUND

Plaintiff's complaint alleges Hennessy's predecessor manufactured and supplied brake shoe arcing machines, also known as grinders, used to grind asbestos brakes. Plaintiff allegedly used defendant's grinder while working as a mechanic from approximately 1958 to 1962. Plaintiff alleges Hennessy knew or should have known its grinders would be used in conjunction with asbestos-containing brake lining, and all brake shoe linings used with automobiles during the relevant period contained asbestos. He asserts Hennessy had a duty to warn of the risks posed by its grinders.

It is undisputed Hennessy's grinders did not contain asbestos or asbestos-containing parts. Its grinders are designed to reshape the friction material of a brake shoe, regardless of the shoe's composition, by mechanical abrasion. When the grinder comes into contact with an asbestos-containing brake shoe, it releases asbestos into the air. Plaintiff presented evidence that virtually all brake linings used during the relevant time period contained asbestos. Plaintiff's industrial safety expert asserts that as of 1986, asbestos brake linings accounted for 90 to 95 percent of the original equipment market and virtually 100 percent of the aftermarket. Defendant presented evidence nonasbestos brake shoe linings were commercially available during the relevant period.

The trial court found the evidence warranted a grant of summary judgment in favor of Hennessy. The court reasoned brake shoes without asbestos existed at the time of plaintiff's exposure. The court rejected plaintiff's contention that Hennessy's grinders were specifically designed to be used with asbestos brake linings because all standard passenger cars and light trucks in 1960 had asbestos-containing drum brake linings. The court reasoned there was no evidence Hennessy's products required asbestos-containing brake pads to function, and Hennessy had provided affirmative evidence its grinders worked on all brake linings, regardless of whether they contained asbestos. On this basis, the court found Hennessy owed no duty to warn of risks created by third parties and concluded all of plaintiff's claims against Hennessy failed.

## II. DISCUSSION

We review the trial court's decision to grant Hennessy's motion for summary judgment de novo. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.) Summary judgment must be granted if all the papers and affidavits submitted, together with "all inferences reasonably deducible from the evidence" and uncontradicted by other inferences or evidence, show that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) Where, as here, the defendant is the moving party, he or she may meet the burden of showing a cause of action has no merit by proving one or more elements of the cause of action cannot be established. (See *id.*, § 437c, subd. (o).) Once the defendant has met that burden, the burden shifts to the plaintiff to show the existence of a triable issue of material fact as to that cause of action. (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 583.) On appeal, "[w]e may consider only those facts which were before the trial court, and disregard any new factual allegations made for the first time on appeal." (*Sangster v. Paetkau*, at p. 163.)

The sole issue on appeal is whether plaintiff raised a triable issue concerning Hennessy's duty to warn. We conclude he did. Hennessey's products did not contain asbestos. But looking at the evidence in the light most favorable to plaintiff, virtually all of the brake linings with which Hennessy's products were used during the relevant period were asbestos-containing. It is also undisputed that grinding such brakes with Hennessy's products released asbestos dust in the air. Thus, a jury could reasonably conclude the inevitable use of Hennessy's products would expose a worker like plaintiff to asbestos dust absent safety protection or adequate warning.

Our analysis begins with our Supreme Court's decision in *O'Neil v. Crane Co.* (2012) 53 Cal.4th 335 (*O'Neil*), which established the standard for evaluating manufacturer liability for injuries from an "adjacent product." The court held "a product manufacturer may not be held liable in strict liability or negligence for harm caused by another manufacturer's product unless the defendant's own product contributed substantially to the harm, or the defendant participated substantially in creating a harmful

3

combined use of the products." (*Id.* at p. 342.)  In that case, the defendants manufactured valves and pumps used in Navy warships.  (*Ibid.*)  O'Neil was exposed to asbestos when replacement parts were used in conjunction with the pumps and valves.  O'Neil argued the manufacturers should be held strictly liable because it was foreseeable workers would be exposed to asbestos in conjunction with their pumps and valves.  (*Id.* at pp. 345–346.)  The manufacturers moved for nonsuit on all causes of action.  (*Id.* at p. 346.)

The court concluded the manufacturers were not strictly liable for O'Neil's injuries "because (a) any design defect in *defendants' products* was not a legal cause of injury to O'Neil, and (b) defendants had no duty to warn of risks arising from *other manufacturers'* products." (*O'Neil, supra*, 53 Cal.4th at p. 348.)  The record did not support O'Neil's claim the products were defective because they were " 'designed to be used' " with asbestos-containing components.  (*Id.* at p. 350.)  The pumps and valves could be used with either asbestos or nonasbestos gaskets and packing.  The products did not "require[] the use of asbestos components." (*Ibid.*)  While manufacturers have a duty to warn consumers about the hazards inherent in their products, this duty does not extend to "hazards arising exclusively from *other* manufacturers' products." (*Id.* at p. 351.)

The *O'Neil* court expressly distinguished *Tellez-Cordova v. Campbell-Hausfeld/Scott Fetzger Co.* (2004) 129 Cal.App.4th 577 (*Tellez-Cordova*).  In that earlier case, Tellez-Cordova developed lung disease from toxic dust released while using grinders and saws with abrasive discs.  (*Tellez-Cordova,* at p. 579.)  He sued the manufacturers of the power tools arguing they were specifically designed to be used with abrasive discs, and therefore it was reasonably foreseeable toxic dust would be released during their intended use.  (*Id.* at p. 580.)  The trial court dismissed the complaint on a demurrer.  (*Id.* at p. 579.)  On appeal the manufacturers argued their tools could be used with a " 'universe of grindable products' " on all types of materials.  (*Id.* at p. 582.)  In reversing the trial court's ruling, the appellate court noted the complaint alleged the application of the abrasive discs or wheels that produced toxic dust was the "inevitable use" of the tools.  (*Id.* at p. 584.)  The "allegation is that the tools had no function without the abrasives which disintegrated into toxic dust." (*Id.* at p. 585.)

4

The *O'Neil* court distinguished *Tellez-Cordova* on two grounds. First, the power tools in *Tellez-Cordova* could "*only* be used in a potentially injury-producing manner." (*O'Neil, supra,* 53 Cal.4th at p. 361.) The "sole purpose" of the tools was to grind metals which would produce harmful dust. (*Ibid.*) To the contrary, in *O'Neil*, the normal operation of the pumps and valves did not "inevitably cause the release of asbestos dust." (*Ibid.*) Second, the power tools in *Tellez-Cordova* caused the release of harmful dust. (*O'Neil*, at p. 361.) "Where the intended use of a product inevitably creates a hazardous situation, it is reasonable to expect the manufacturer to give warnings." (*Ibid.*) But manufacturers are not required to warn about all foreseeable harms that might occur in the vicinity of their products. Conversely, where the hazard arises entirely from another product, and the defendant's product does not create or contribute to that hazard, liability is not appropriate. (*Id.* at pp. 361–362.)

More recently this district issued two opinions applying *O'Neil* and *Tellez-Cordova*. (*Shields v. Hennessy Industries, Inc.* (2012) 205 Cal.App.4th 782 (*Shields*); *Bettencourt v. Hennessy Industries, Inc.* (2012) 205 Cal.App.4th 1103 (*Bettencourt*).) Both cases involved claims against Hennessy that were dismissed by the trial court on motions for judgment on the pleadings. In *Shields*, the plaintiff was a mechanic who was diagnosed with various diseases from asbestos exposure. (*Id.* at p. 784.) He alleged Hennessy was liable in negligence and strict liability. (*Ibid.*) The complaint alleged Hennessy grinders were designed for use on car and truck brakes containing asbestos. (*Id.* at p. 786.) Hennessy " 'specifically designed [its] machines for grinding asbestos-containing brake linings [and they] had no other function than to grind asbestos-containing brake linings.' " (*Id.* at p. 787.) This was their " 'only intended use.' " (*Ibid.*)

We held that the plaintiffs' causes of action were sufficient to survive a motion for judgment on the pleadings. (*Shields*, *supra*, 205 Cal.App.4th at p. 797.) The plaintiffs alleged Hennessey designed and manufactured a machine whose only purpose and " ' "inevitable use" ' " was to grind brakes and at "all 'relevant times' " the brakes it was designed to grind contained asbestos. (*Ibid.*) The asbestos in the brake linings was " 'physically bound' " but became airborne due to the grinding action of Hennessy's

5

machines.  (*Ibid*.)  "Hennessy's product was intended to be used with another product for the very activity that created a hazardous situation for the user.  Its sole intended use was for an activity known to Hennessy to pose an unreasonable risk of harm."  (*Ibid.*)  "[T]he alleged sole and intended use of the brake arcing machine resulted in the release of contained asbestos particles.  These allegations satisfy the circumscribed parameters of liability articulated by the Court of Appeal in *Tellez-Cordova* and approved by the Supreme Court in *O'Neil.*"  (*Id.* at p. 798.)

Division Five reached a similar result in *Bettencourt*.  The trial court had granted judgment on the pleadings on strict liability and negligence causes of action against Hennessy.  (*Bettencourt, supra,* 205 Cal.App.4th at p. 1106.)  The complaint alleged that "[d]uring the periods relevant to this litigation, all brakeshoe linings used on automobiles, light trucks, and commercial trucks in the United States contained asbestos."  (*Id.* at p. 1108.)  Hennessy's grinders were specifically designed to grind brakes and had no other function.  (*Ibid.*)  It was also alleged the sole and intended purpose of Hennessy's grinders was to grind brakes, and all brake shoe linings in the United States contained asbestos, so "it was not only foreseeable that Hennessy's machines would be used to grind such linings, this was their inevitable use."  (*Id.* at p. 1117.)  The court found these allegations were "indistinguishable from those *Tellez-Cordova* held sufficient to survive demurrer."  (*Ibid.*)  "Under the allegations of plaintiffs' complaints, which we must accept as true, Hennessy's 'product was intended to be used with another product *for the very activity that created a hazardous situation*.' "  (*Ibid.*, quoting *O'Neil, supra*, 53 Cal.4th at p. 361.)  Hennessy bore some direct responsibility because its product substantially contributed to the harm.  (*Bettencourt*, at p. 1117.)  Therefore, the court concluded:  "Like our colleagues in Division One, we hold that plaintiffs' 'allegations satisfy the circumscribed parameters of liability articulated by the Court of Appeal in *Tellez-Cordova* and approved by the Supreme Court in *O'Neil.*' "  (*Id.* at p. 1112, quoting *Shields, supra,* 205 Cal.App.4th at p. 798.)

The most recent case to address Hennessy's liability for its grinders is *Sherman*, in which the Second Appellate District reversed an award of summary judgment in favor

6

of Hennessy.  The plaintiffs asserted claims for negligence, strict liability, and loss of consortium.  (*Sherman, supra,* 237 Cal.App.4th at p. 1137.)  The plaintiffs alleged Hennessy sold grinders whose " 'sole function' " was to abrade asbestos brake linings and asbestos dust was released when the grinders were used.  (*Ibid.*)  In its motion for summary judgment, Hennessy argued it could not be held liable under *O'Neil* unless the machines' sole intended purpose was to abrade asbestos brake linings, and the plaintiffs did not raise a triable issue of fact because the undisputed evidence showed that nonasbestos brakes were available during the relevant time period.  (*Sherman*, at pp. 1137–1138.)

The evidence presented in *Sherman* is strikingly similar to the evidence presented by Hennessy in this case.  Hennessy relied on the declarations of Dennis Bridge, an expert on industrial safety, and Craig Mountz, a Hennessy engineer.  (*Sherman, supra,* 237 Cal.App.4th at p. 1144.)  Bridge stated asbestos-free brake linings were available in the 1960's and 1970's for popular muscle cars and some passenger cars.  (*Ibid.*)  Mountz stated the grinders were designed to work on any type of brake, regardless of whether it contained asbestos.  (*Ibid.*)  Hennessy manufactured different abrasives to " 'better tailor' " the machine to certain metallic and high performance brake linings.  (*Ibid.*)  Hennessy maintained that during the time Sherman worked with its grinders, there were asbestos-free brakes available and being used.  (*Id.* at pp. 1144–1145.)

Sherman presented evidence that during the 1960's and 1970's brake linings " 'almost universally' " contained asbestos.  (*Sherman, supra,* 237 Cal.App.4th at p. 1145.)  Like plaintiff in this case, Sherman submitted the declaration of an industrial safety expert who explained that as late as 1986, 90 to 95 percent of brake linings contained asbestos.  (*Id.* at p. 1145.)  In 1973, Hennessy began offering an asbestos dust collection system with its grinders along with a warning label that " 'BRAKE LINING MATERIALS CONTAIN ASBESTOS.' "  (*Id.* at p. 1146.)

The Second Appellate District limited its analysis to whether the Hennessy grinder " 'contributed substantially to the harm.' "  (*Sherman, supra,* 237 Cal.App.4th at pp. 1146–1147.)  A duty is imposed when " 'the intended use of a product *inevitably*

7

creates a hazardous situation . . . ,' but not when that situation is merely foreseeable and is due solely to another product." (*Id.* at p. 1147, quoting *O'Neil*, *supra,* 53 Cal.4th at pp. 361–362, italics added by *Sherman*.) The court concluded Hennessy's grinders were designed to abrade brake linings for passenger cars and light trucks, "the vast majority of which contained asbestos from the 1960's to the mid-1970's." (*Sherman,* at p. 1147.) Hennessy even began to market an asbestos dust collection system in 1973 because asbestos brakes were " 'near universal.' " (*Ibid.*) The grinder necessarily produced dust in its intended use which made it "virtually inevitable that the average user would be exposed to hazardous asbestos dust." (*Id.* at p. 1148.) "[T]he machine was intended to be used with drum brake linings 'for the very activity' that generated the asbestos dust, the creation of which was 'inevitabl[e]'—rather than merely foreseeable—due to the overwhelming prevalence of asbestos-containing linings." (*Ibid.*, fn. omitted.)

The court rejected Hennessy's argument that its grinders were meant to abrade any brake lining regardless of the composition, and that the *Tellez-Cordova* exception applied when a product can *only* be used in an injury-producing manner. (*Sherman, supra,* 237 Cal.App.4th at p. 1148.) "We find the relevant question not whether asbestos-containing brake linings were necessary to the operation of [Hennessy's] machine, as Hennessy maintains, but whether someone using the grinder as intended during the period in question would invariably have been subjected to asbestos dust. On this record, the answer is 'yes.' " (*Id.* at p. 1149.) Sherman's use of the machine " 'for the very activity that created a hazardous situation' " was not merely possible, but inevitable. (*Ibid.*, quoting *O'Neil, supra,* 53 Cal.4th at p. 361.) The court further considered the policy rationale underlying *Tellez-Cordova,* and the fact that Hennessy derived an economic benefit from the use of its machines with asbestos-containing brakes. "Because the manufacturer's tool was useable only with certain other products, it indirectly derived economic benefit from their sale. Accordingly, as the combined use of the tool with those products inevitably created a hazardous condition, it was fair to require the tool manufacturer to share liability for the resulting injuries." (*Sherman*, at p. 1149.) Finally, the court found there was a triable issue of fact as to whether the brake

linings emitted asbestos fibers in the absence of grinding. Therefore, summary judgment was improperly granted. (*Id.* at p. 1152.)

We agree with the Second Appellate District and conclude *O'Neil* does not require evidence of exclusive use, but rather requires a showing of " 'inevitable use.' " (*Sherman, supra,* 237 Cal.App.4th at p. 1149.) *O'Neil* does not use the term exclusive use; it mentions inevitable use: "Where the *intended use* of a product *inevitably* creates a hazardous situation, it is reasonable to expect the manufacturer to give warnings." (*O'Neil, supra,* 53 Cal.4th at p. 361, italics added.) The *O'Neil* court mentioned the concept of a "sole purpose" when distinguishing *Tellez-Cordova*. (*O'Neil*, at p. 361.) The court stated that unlike the pumps and valves, the power tools in *Tellez-Cordova* could only be used in an injury-producing manner. "Their *sole purpose* was to grind metals in a process that *inevitably produced* harmful dust." (*O'Neil*, at p. 361, italics added.) *Shields* and *Bettencourt* echo this "sole use" concept but only to the extent they are accepting the language used in the allegations of the complaint. Both cases conclude the plaintiffs' allegations that the grinders' "sole" use was to grind asbestos brakes is sufficient to satisfy *O'Neil*. (*Shields, supra,* 205 Cal.App.4th at pp. 797–798; *Bettencourt*, *supra*, 205 Cal.App.4th at p. 1117.) But neither case holds that a finding of sole or exclusive use is necessary under *O'Neil*.

The question then becomes: If virtually all brake linings during the relevant time period contained asbestos which resulted in Hennessy's machines being used 90 to 95 percent of the time to grind brakes producing asbestos dust, did the "intended use of [the] product inevitably create[] a hazardous situation"? (*O'Neil, supra*, 53 Cal.4th at p. 361.) Faced with nearly identical facts, the Second Appellate District answered "yes." (*Sherman, supra*, 237 Cal.App.4th at p. 1149.) The record here reflects that although there were nonasbestos brakes available, they were only in limited use in the 1960's and 1970's. For example, Hennessy's engineering expert asserted nonasbestos brake shoes were typically used in certain muscle cars and high performance vehicles during the period, and they were sometimes used in more powerful GM/Chevrolet and Ford vehicles, though less frequently than standard type brake shoes. While Hennessy's

9

grinders could be used on nonasbestos brakes, given that the vast majority of brakes contained asbestos, we conclude the "normal operation" of the grinders inevitably caused the release of asbestos dust. This is contrasted with *O'Neil* where the court held that normal operation of the manufacturer's pumps and valves did not inevitably release asbestos dust. This was true even if "normal operation" was defined broadly to include repair and maintenance. (*Id.* at p. 361.) Nothing about the pumps and valves caused the release of dust.

The facts in the instant action are more akin to *Tellez-Cordova* because the action of the grinders caused the release of asbestos dust from the brakes. The hazard was created from the use of the products together. (*Tellez-Cordova, supra,* 129 Cal.App.4th at p. 584.) Unlike the pumps and valves in *O'Neil*, the grinders here contributed to the hazard by releasing the asbestos dust from the brake linings. This distinction was highlighted by the court in *Sherman*: "[Hennessy's] machine's role in the creation of the relevant hazardous condition was not merely foreseeable, but intended and contributed substantially to the condition itself. Similarly, unlike the pumps and valves in *O'Neil*, which did not cause the release of asbestos fibers, here, it was the grinding action of [Hennessy]'s machine that generated the release of harmful asbestos dust." (*Sherman, supra,* 237 Cal.App.4th at p. 1148, fn. 4.) Because the normal operation of Hennessy's grinders on brake linings released asbestos dust, their "intended use was for an activity known to Hennessy to pose an unreasonable risk of harm." (*Shields, supra,* 205 Cal.App.4th at p. 797.)

Like the *Sherman* court, we also reject Hennessy's argument that the *Tellez-Cordova* exception only applies when a product can *solely* be used in an injury-producing manner. (*Sherman, supra*, 237 Cal.App.4th at p. 1148.) "We find the relevant question not whether asbestos-containing brake linings were necessary to the operation of [Hennessy's] machine, as Hennessy maintains, but whether someone using the grinder as intended during the period in question would invariably have been subjected to asbestos dust." (*Id.* at p. 1149.) There is at least a triable issue that use of the machine " 'for the very activity that created a hazardous situation' " was not merely possible, but inevitable.

10

(*Ibid.*) As in *Sherman*, there is evidence Hennessy grinders were designed for passenger cars and trucks, "the vast majority of which contained asbestos from the 1960's to the mid-1970's." (*Id.* at p. 1147.)

We are further persuaded by the policy argument advanced in *Sherman*. Because a manufacturer derives an economic benefit from use of its product with certain other products, and "the combined use of the tool with those products inevitably created a hazardous condition, it was fair to require the tool manufacturer to share liability for the resulting injuries." (*Sherman, supra*, 237 Cal.App.4th at p. 1149.) The policy rationale underlying *Tellez-Cordova* was that if a manufacturer's product contributed to the hazardous situation, the manufacturer should be held liable. (*Tellez-Cordova, supra,* 129 Cal.App.4th at p. 584.) The combined use of Hennessy's machines with the asbestos brakes inevitably created a hazardous condition by releasing asbestos fibers into the air. Such is the case here. Looking at the evidence in the light most favorable to plaintiff, Hennessy was in a position to provide safeguards from this exposure, and thus Hennessy should share liability for injuries resulting from the hazardous condition created by the use of its grinders in the 1950's and 1960's.

## III. DISPOSITION

The judgment is reversed.

_____

Margulies, J.

We concur:


_____

Humes, P.J.


_____

Dondero, J.

Filed 5/17/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SUSAN HETZEL,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>HENNESSY INDUSTRIES, INC.,<br><br>    Defendant and Respondent. | A144218<br><br>(Alameda County<br>Super. Ct. No. RG13663277)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

The opinion in the above-entitled matter filed on April 28, 2016, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

Dated:

_____
Margulies, J.

Trial Court:    Alameda County Superior Court

Trial Judge:    Hon. Jo-Lynne Q. Lee

Counsel:

Brayton Purcell LLP, Alan R. Brayton, Richard M. Grant, and Gary L. Brayton for Plaintiff and Appellant.

Gordon & Rees LLP, Don Willenburg and Mitchell B. Malachowski for Defendant and Respondent.